[Cite as *Lee v. Starr*, 2020-Ohio-1649.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


CODY T. LEE

      Appellee

-vs-

LEAH MARIE LEILANI STARR

      Appellant

JUDGES:
Hon. John W. Wise, P.J.
Hon. Patricia A. Delaney, J.
Hon. Earle E. Wise, Jr., J.

Case No. 2019 CA 00094

O P I N I O N


CHARACTER OF PROCEEDING:      Civil Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. 17 DR 1251

JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      April 22, 2020


APPEARANCES:

For Appellee

RANDY L. HAPPENEY
DAGGER, JOHNSTON, MILLER,
OGILVIE & HAMPSON
144 East Main Street, P. O. Box 667
Lancaster, Ohio 43130

GUARDIAN AD LITEM

MELINDA SEEDS
195 East Broad Street
Pataskala, Ohio 43062

For Appellant

COURTNEY A. ZOLLARS
THE NIGH LAW GROUP, LLC
115 West Main Street
Suite 300(A)
Columbus, Ohio 43215

*Wise, John, P. J.*

**{¶1}** Defendant-Appellant Leah Marie Leilani Starr appeals the August 23, 2019, decision of the Licking County Court of Common Pleas determining parentage and allocation of parental rights and responsibilities.

**{¶2}** Plaintiff-Appellee is Cody T. Lee.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** The relevant facts and procedural history are as follows:

**{¶4}** Appellant Leah Starr and Appellee Cody Lee are the parents of the minor child Irelynn Marie Starr-Lee (DOB: October 30, 2016). The parties met while they were both working at the Dr. Pepper Bottling/Distribution plant located in Columbus, Ohio. (T. at 17-18). Appellee testified that the parties were actually broken up at the time Appellant disclosed she was pregnant, but Appellee participated in the pregnancy. (T. at 27-29). Just prior to the birth of the minor child, Appellee moved in with Appellant into an apartment in which she and her older child, Jacob, had just recently moved. (T. at 28).

**{¶5}** The child's birth certificate listed her name as Irelynn Marie Starr-Lee. However, no Acknowledgement of Paternity was ever completed.

**{¶6}** Appellee and Appellant resided together from just prior to the birth of the child until October 31 or November 1, 2017, when Appellee advised Appellant that he was moving out of the apartment they shared. (T. at 30, 248).

**{¶7}** On November 7, 2017, Appellee filed a Complaint for Determination of Parentage and Allocation of Parental Rights and Responsibilities, which was served on Appellant on November 14, 2017.

{¶8}   On November 1, 2018, and November 2, 2018, Plaintiff's Complaint for Determination of Parentage and Allocation of Parental Rights and Responsibilities was heard before a magistrate.

{¶9}   At the hearing, the Magistrate heard the following testimony:

{¶10}  Appellee testified that when Appellant was pregnant, he attended doctor's appointments with her and helped financially by paying for the appointments. (T. at 29). He and Appellant also visited a couple of hospitals together prior to the child's birth to determine which hospital they preferred. *Id*. He was also present at the child's birth. Id.

{¶11}  Appellee testified that while he and Appellant were living together, Appellant would not allow him to pick Irelynn up from daycare, take her anywhere, or do anything with her by himself, without Appellant present. (T. at 32).  He testified that the only one-on-one time he was allowed with his child was playing with her in the apartment, but that Appellant was also there in the apartment. *Id*.

{¶12}  Appellee testified that he and Appellant attended approximately three or four counseling sessions in the fall of 2017, not long before he moved out.

{¶13}  Appellee testified that unbeknownst to him, upon advising Appellant that he was moving out, she began making arrangements to move cross-country, to the state of Washington, to reside with her mother. (T. at 39). She gave her employer two weeks' notice on November 6, 2017, explaining that she had "another opportunity that is too hard to pass up ... " (Appellee Ex. 17).

{¶14}  Appellant admitted that she asked her employer not to disclose her resignation because Appellee worked there. (T. at 401). She stated that her lawyer told

her not to tell Appellee. (T. at 340). She testified that she did not notify Chris Boyce, the father of her older child, Jacob, either. (T. at 339).

{¶15} Appellant in her testimony claimed that Appellee had an alcohol problem, was a racist, was violent, was a bully, and that he did not know how to provide primary care for the child because he had never done it. She also claimed that he showed a photograph of her around work at Dr. Pepper in 2012, which resulted in her being shunned for 5 years and ultimately caused her to resign her position there.

{¶16} The Magistrate also reviewed the Guardian ad Litem's (GAL) Final Report and heard the GAL's testimony and recommendations.

{¶17} On April 2, 2019, the Magistrate's Decision was filed.

{¶18} The Magistrate found insufficient evidence to support Appellant's claims with regard to Appellee's fitness. The Magistrate further found that Appellant prevented Appellee from actively parenting the child outside of her direct supervision, and that Appellee's testimony with regard to this issue was more credible than Appellant's (Magistrate Dec. at 8). The Magistrate also found that Appellant actively took steps to keep Appellee from learning that she intended to move the child to the state of Washington. (Magistrate's Dec. at 8-9).

{¶19} In response to concerns raised by Appellant, the Magistrate found the GAL appeared to have performed a thorough investigation in this case and that she completed her duties to an extent sufficient to allow her to make a reasoned and informed recommendation. (Magistrate's Dec. at 7). Additionally, the Magistrate found Appellant failed to comply with the GAL's requests for her to sign releases to allow her to speak

with various professionals and further failed to send the GAL pictures of her residence as requested. *Id.*

**{¶20}** The Magistrate found that Appellee was the parent most likely to encourage the sharing of love and affection between the child and the other parent and to cooperate and communicate with the other parent. (Magistrate's Dec. at 9).

**{¶21}** Ultimately, the Magistrate found that it was not in the child's best interest to award sole custody to Appellant noting that she does not appear to understand how important both parents are in a child's life. Specifically, she does not appear to understand that Appellee in this case is willing and able to be an active and loving parent and should be given the opportunity to be one. *Id.*

**{¶22}** The Magistrate found that it was appropriate and in the child's best interest for Appellee to be named the sole legal custodian and residential parent.

**{¶23}** By Judgment Entry filed April 2, 2019, the trial court approved and adopted the Magistrate's Decision.

**{¶24}** On April 16, 2019, Appellant filed objections to the Magistrate's Decision, raising 16 objections. On the same date, Appellant also filed a Motion for Extension of Time to Supplement Objection to Magistrate's Decision once the transcript was completed, which the court granted on April 17, 2019.

**{¶25}** On July 3, 2019, Appellant filed her Supplemental Objection to the Magistrate's Decision, raising 8 objections.

**{¶26}** On July 26, 2019, Appellee filed his Response to the Objections to the Magistrate's Decision.

{¶27} On August 20, 2019, the trial court denied Appellant's objections, and the findings of fact and conclusions of law found within the April 2, 2019, Magistrate's Decision were adopted by the trial court.

{¶28} By Judgment Entry filed August 23, 2019, the trial court made certain orders including a parenting time schedule, healthcare, child support, etc. The trial court also denied Appellee's Motion for Contempt and approved and allowed the GAL's bills.

{¶29} Appellant now appeals, raising the following assignments of error for review:

**ASSIGNMENTS OF ERROR[1]**

{¶30} "I. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S TESTIMONY WAS NOT CREDIBLE.

{¶31} "II. THE TRIAL COURT ERRED IN FINDING THAT EVIDENCE WAS LACKING THAT DOMESTIC VIOLENCE OCCURRED BETWEEN THE PARTIES.

{¶32} "III. THE TRIAL COURT ERRED IN FINDING THAT APPELLEE'S ALCOHOL CONSUMPTION DID NOT HAVE A NEGATIVE IMPACT ON THE MINOR CHILD.

{¶33} "IV. THE TRIAL COURT ERRED IN FINDING THAT APPELLEE WAS LIKELY TO HONOR AND FACILITATE VISITATION AND COMPANIONSHIP RIGHTS OF THE APPELLANT AS THEY RELATE TO THE MINOR CHILD.

{¶34} "V. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT HAD UNCLEAN HANDS WHEN RAISING THE ISSUE ON OBJECTION THAT THE

---

[1] Appellant's Assignments of Error were labeled a-h in her brief but have been re-numbered I-VIII for purposes of this Opinion.

GUARDIAN AD LITEM WAS BIASED AND SHOWED FAVORITISM TO THE APPELLEE.

**{¶35}** "VI. THE TRIAL COURT ERRED IN FINDING THAT THE GUARDIAN AD LITEM CONDUCTED A THOROUGH INVESTIGATION.

**{¶36}** "VII. THE TRIAL COURT ERRED IN FINDING THAT APPELLEE WAS THE PARENT MOST LIKELY TO ENCOURAGE A LOVING RELATIONSHIP BETWEEN THE CHILD AND THE PARENTS.

**{¶37}** "VIII. THE TRIAL COURT ERRED IN FINDING THAT IT WAS IN THE MINOR CHILD'S BEST INTEREST FOR THE APPELLEE TO BE NAMED THE SOLE LEGAL CUSTODIAN OF THE MINOR CHILD."

*Standard of Review*

**{¶38}** Our standard of review in assessing the disposition of child custody matters is that of abuse of discretion. *Miller v. Miller,* 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Dinger v. Dinger,* 5th Dist. Stark No. 2001 CA 00039, 2001-Ohio-1386, 2001 WL 1141268. The trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferential review in a child custody determination is especially crucial "where there may

be much evidence by the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

**I., II., III.**

**{¶39}** Appellant's first three assignments of error all challenge the trial court's factual findings. We shall therefore address said assignments together.

**{¶40}** In assignments of error one, two and three, Appellant argues that the trial court erred in finding that her testimony was not credible, and that there was a lack of evidence as to her allegations of domestic violence and alcohol problems on the part of Appellant. We disagree.

*Credibility*

**{¶41}** Appellant herein challenges the trial court's finding "that the Mother's explanations as to why she had no choice but to move states away from the Father after being served with his Complaint lacked credibility." (Magistrate's Dec. at 7).

**{¶42}** Upon review, we find that Appellant, when questioned stated that her reasons for moving were financial. (T. at 373). She explained that Appellee was the "breadwinner" and that after the break-up she was having difficulty paying her bills. (T. at 105, 375).

**{¶43}** Additionally, the Guardian ad Litem questioned statements or claims made by Appellant such as a purported stay at a domestic violence shelter, medical issues concerning the child and her Al-Anon sponsor. (T. at 392-407). Appellant either denied making the statements or claimed there had been a miscommunication. (T. at 411). The trial court found that many of these concerns could have been cleared up had Appellant

signed a waiver permitting the GAL to speak with the counselor, the domestic violence counsel or the Al-Anon counselor, but that she refused to do so. (T. at 411-412).

*Domestic Violence*

**{¶44}** Appellant contends that an incident occurred in the summer of 2017 wherein Appellee allegedly blocked her vehicle by standing in front of it, and then the two of them struggled over control of the car seat used to transport the child. (T. at 215-217, 357-358). Appellant admitted that she did not call the police or anyone else for assistance. (T. at 221, 358-359, 361).

**{¶45}** Appellee denied that he tried to forcibly take the car seat from Appellant, but admitted that he stood in front of her vehicle in an attempt to stop her from leaving with the child. (T. at 98).

**{¶46}** The trial court found that there was conflicting evidence presented at the hearing and no evidence of injuries or physical violence. (JE at 10).

*Alcohol Usage*

**{¶47}** Additionally, Appellant contends that the trial court erred in finding that Appellee's alcohol consumption negatively impacts the minor child. In support of her contention, testimony was presented by two friends of Appellant who stated that they had observed Appellant drinking alcohol at a Christmas party and at the child's first birthday party. (T. at 460, 446, 454). Appellant testified that she occasionally smelled alcohol on Appellee's breath. (T. at 212-213). Additionally, Appellant presented photographs depicting two empty beer cans in the parties' storage unit. (T. at 245, 247). Appellant admitted that she did not believe Appellee had an alcohol problem while they were together but became concerned after their break-up. (T. at 205, 343-344).

**{¶48}** Appellee testified that he is social drinker and does not have an alcohol problem. (T. at 49, 89-93). He further denied ever drinking alone. (T. at 93). He stated that he has never been charged with any alcohol-related offenses and has never had any alcohol-related issues with his employment. (T. at 48).

**{¶49}** As noted above, the trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). The credibility of the witnesses and the weight to be given their testimony is primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 231, paragraph one of the syllabus. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Dinger v. Dinger,* 5th Dist. Stark No. 2001 CA 00039, 2001-Ohio-1386, 2001 WL 1141268. Thus, we defer to the trial court's interpretation of the evidence as it observed first-hand witnesses and their demeanor. *Wright v. Wright,* 5th Dist. Stark No. 2012CA00232, 2013-Ohio-4138, 2013 WL 5406795.

**{¶50}** Here, the magistrate heard the testimony of Appellant, Appellee and GAL with regard to Appellant's allegations and found that there was not sufficient evidence to support her claims. Upon review, we find that the record supports the trial court's findings, and we will not disturb said findings on appeal.

**{¶51}** Appellant's first, second and third assignments of error are overruled.

**V., VI.**

**{¶52}** In her fifth and sixth assignments of error, Appellant challenges the trial court's findings as to the testimony of the Guardian ad Litem.

**{¶53}** Sup.R. 48(D) sets forth the responsibilities for GALs, and provides, in pertinent part:

(1) A guardian ad litem shall represent the best interest of the child for whom the guardian is appointed. Representation of best interest may be inconsistent with the wishes of the child whose interest the guardian ad litem represents.

(2) A guardian ad litem shall maintain independence, objectivity and fairness as well as the appearance of fairness in dealings with parties and professionals, both in and out of the courtroom and shall have no ex parte communications with the court regarding the merits of the case.

\* \* \*

(13) A guardian ad litem shall make reasonable efforts to become informed about the facts of the case and to contact all parties. In order to provide the court with relevant information and an informed recommendation as to the child's best interest, a guardian ad litem shall, at a minimum, do the following, unless impracticable or inadvisable because of the age of the child or the specific circumstances of a particular case:

(a) Meet with and interview the child and observe the child with each parent, foster parent, guardian or physical custodian and conduct at least one interview with the child where none of these individuals is present;

(b) Visit the child at his or her residence in accordance with any standards established by the court in which the guardian ad litem is appointed;

(c) Ascertain the wishes of the child;

(d) Meet with and interview the parties, foster parents and other significant individuals who may have relevant knowledge regarding the issues of the case;

(e) Review pleadings and other relevant court documents in the case in which the guardian ad litem is appointed;

(f) Review criminal, civil, educational and administrative records pertaining to the child and, if appropriate, to the child's family or to other parties in the case;

(g) Interview school personnel, medical and mental health providers, child protective services workers and relevant court personnel and obtain copies of relevant records;

(h) Recommend that the court order psychological evaluations, mental health and/or substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court; and

(i) Perform any other investigation necessary to make an informed recommendation regarding the best interest of the child.

**{¶54}** Initially, Appellant argues the trial court erred in finding that she had unclean hands to argue bias on the part of the GAL.

**{¶55}** Upon review, we find no error in the trial court's findings that Appellant failed to raise any concerns about possible bias on the part of the GAL until after the Magistrate

ruled in this matter, thereby denying the trier of fact the opportunity to address the issue prior to hearing or a decision being rendered. *State v. Peagler*, 76 Ohio St.3d 496, 499.

**{¶56}** Courts have recognized that the allegation of bias (or prejudice) in a guardian *ad litem* is not accurate when it reflects the guardian *ad litem* fulfilling his or her duty to his ward. *See, e.g., MacFarlane v. MacFarlane,* Eighth District, Cuyahoga App. No. 86835, 2006-0hio-3155 at 137. This Court rejected an assignment of error that the GAL was biased noting that Appellant raised no objections to the GAL's behavior until the final recommendation. *Globokar v. Globokar,* 5th District, Stark App. No. 2009-CA-00138, 2010-0hio-1737.

**{¶57}** Disagreement with the court's ultimate determination of custody does not demonstrate bias, prejudice, or improper action on the part of the GAL. *See King v. King,* 9th Dist. Medina No. 12CA0060–M, 2013-Ohio-3070, 2013 WL 3534242, ¶ 9.

**{¶58}** We further find no personal bias or prejudice on the part of the GAL based on details of her own personal history she recounted during her testimony. If the views of the guardian ad litem interfere with the performance of his or her duties or with the regular conduct of proceedings, then error will occur. We do not find that to be the case here as the guardian ad litem satisfied her duty pursuant to statute. We find nothing to show that the GAL's personal history affected the basic fairness, integrity, or public reputation of the judicial process.

**{¶59}** Secondly, Appellant challenges the trial court's finding that the GAL conducted a thorough investigation.

**{¶60}** The trial court found that the GAL spoke with minor child and inspected the home of the Appellee, (T. at 477-478). The GAL also spoke with Appellant for a number

of hours by telephone since she was out of state. (T. at 478-482). She also spoke with the parties' former counselor, and attempted to speak with Appellant's Al-Anon sponsor and domestic violence counselor. (T. at 489, 535, 545). The GAL also spoke with the father of Appellant's older child and a former guardian in a different case involving Appellant. (T. at 482-483, 536, 538-540). She also spoke with Appellant's former employer, her friend April Davis, her father as well as Appellee's parents. (T. at 536, 529, 483, 484, 531-532). She spoke with the child's pediatricians in Ohio and Washington and the child's counselors in Washington and Ohio. (T. at 491-492, 500, 505-509). Additionally, she observed the parents interact with the minor child. (T. at 492-493, 543-544, 551-552).

{¶61} Further, Appellant failed to cooperate fully with the GAL by refusing to sign waivers which would have allowed the GAL to interview additional witnesses in this matter.

{¶62} Additionally, while the GAL admitted on cross-examination that she failed to contact two witnesses, Kellee Heldman and Deborah Kemper, whose names were submitted to her by Appellant, both of these witnesses were present at the hearing and presented testimony.

{¶63} Based on the foregoing, we find no error in the trial court's findings that the GAL in this case conducted a thorough investigation.

{¶64} Moreover, it is important to recognize that a trial court is not bound by the recommendation of the guardian ad litem. *In re M.Z.,* 9th Dist. Lorain No. 11CA010104, 2012–Ohio–3194, ¶ 35; *In re Andrew B.,* 6th Dist. Lucas No. L01–1440, 2002–Ohio–3977, at ¶ 64; *Roberts v. McGrady,* 9th Dist. Summit No. 16986, at *4 (May 10, 1995)

(concluding that because a guardian ad litem's report is not dispositive, but merely evidence for the court's consideration, any unfair bias was harmless error). The trial court determines a guardian ad litem's credibility and the weight to be given to his/her report. The trial judge, as trier of fact, was entitled to believe or disbelieve the guardian ad litem's testimony and to consider it in the context of all the evidence before the court.

**{¶65}** Appellant has failed to point to any portion of the trial court's entry that demonstrates that the trial judge erroneously relied on the testimony or the report of the guardian ad litem. Nor does she point to any particular finding that is unreasonable or otherwise unsupported by the evidence because of improper reliance on the testimony of the guardian ad litem.

**{¶66}** Appellant's fifth and sixth assignments of error are overruled.

### IV. VII., VIII.

**{¶67}** In her fourth, seventh and eight assignments of error, Appellant argues the trial court erred in designating Appellee residential parent of the minor child.

**{¶68}** Appellant submits the trial court abused its discretion by failing to base its decision regarding the allocation of parental rights on the factors set forth in R.C. 3109.04(F)(1).

**{¶69}** Where an allocation of parental rights and responsibilities is supported by a "substantial amount of credible and competent evidence" the decision will not be reversed. *See*, *Davis v. Flickinger* (1997)*, 77 Ohio St.3d 415, 418, quoting *Bechtol v. Bechtol* (1990)*, 49 Ohio St.3d 21, syllabus. A trial court's judgment in custody matters enjoys a presumption of correctness. *Butler v. Butler* (1995)*, 107 Ohio App.3d 633, 638. Accordingly, a trial court has broad discretion when it decides the allocation of parental

rights and responsibilities. *Donovan v. Donovan* (1996), 110 Ohio App.3d 615, 618. We will not disturb the decision of the trial court on appeal if said decision is supported by some competent, credible evidence. *Seasons Coal Co. v. Cleveland (1984),* 10 Ohio St.3d 77, 80. Absent an abuse of discretion, an appellate court will not reverse the custody award of the trial court. An appellate court should not substitute its judgment for that of the trial court. *Trickey v. Trickey (1952),* 158 Ohio St. 9.

*Best Interest*

**{¶70}** R.C. §3109.04(B)(1) governs initial custody awards and provides, in pertinent part, "when making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding * * * the court shall take into account that which would be in the best interest of the children."

**{¶71}** Because this action involved an original determination of custody of a child of an unmarried mother, R.C. 3109.042 confers a default status on Appellant as the residential parent until an order is issued by the trial court designating the residential parent and legal guardian. *Williams v. Tumblin,* 5th Dist. Coshocton No. 2014CA0013, 2014–Ohio–4365. However, when making an initial custody determination of the child of an unmarried mother, R.C. 3109.042 requires the court to treat each parent as standing upon equal footing. *Id.* Under these circumstances, the trial court's custody determination need only be based on the best interests of the child according to R.C. 3109.04(F). *See In re Cihon,* 5th Dist. Guernsey No. 09 CA 00002, 2009–Ohio–5805.

**{¶72}** R.C. §3109.04(F) sets forth the factors to consider in determining the best interests of the children in allocating parental rights and responsibilities generally, and specifically as regarding shared parenting:

(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶73}** Although Appellant provided contrary testimony to several of these factors, we defer to the trial court's interpretation and weight of the evidence as it observed first-hand witnesses and their demeanor. *Wright v. Wright,* 5th Dist. Stark No. 2012CA00232, 2013-Ohio-4138, 2013 WL 5406795.

**{¶74}** Upon review, we find no abuse of discretion in the trial court's conclusion it was in the best interest to name Appellee the residential parent and legal custodian. The trial court found that the magistrate in her decision thoroughly analyzed the factors and the findings were supported by the record.

*Honor and Facilitate Visitation and Companionship*

*Encourage Loving Relationship Between Child and Parent*

**{¶75}** The magistrate found that while both parents "appear likely to honor and facilitate visitation and companionship rights so long as the relevant orders are clear and unambiguous", she found "the Father is the parent most likely to encourage the sharing of love and affection between the child and the other parent. (Magistrate's Dec. at 5, 9).

**{¶76}** The Magistrate herein based her decision on Appellant's actions in moving out of state and failing to disclose to Appellee where she was living, requiring Appellant to hire a private investigator. The trial court also found that even before she moved away, Appellant's actions appeared to discourage contact between Appellee and the child. (T. at 32-33, 51, 74; Aug. 23, 2019, JE at 16). The trial court further found that Appellant's actions resulted in Appellee having no contact with the child for approximately nine months and that contact only occurred after temporary orders were issued. (T. at 39-40; Aug. 23, 2019, JE at 16).

**{¶77}** Upon review, we find no abuse of discretion in the trial court's conclusion that Appellee was the parent most likely to honor and facilitate visitation and companionship and to encourage a loving relationship between the child and the other parent. The trial court's decision thoroughly analyzed the factors, and the findings were supported by the record.

**{¶78}** Appellant's fourth, seventh and eighth assignments of error are overruled.

**{¶79}** Accordingly, the judgment of the Licking County Domestic Relations Court, Licking County, Ohio, is affirmed.

By: Wise, John, P. J.

Delaney, J., and

Wise, Earle, J., concur.

 

 

_____

HON. JOHN W. WISE

 

_____

HON. PATRICIA A. DELANEY

 

_____

HON. EARLE E. WISE, JR.

JWW/d 0417

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


CODY T. LEE                          :
                                     :
    Appellee                     :
                                     :
-vs-                                 :        JUDGMENT ENTRY
                                     :
LEAH MARIE LEILANI STARR             :
                                     :
    Appellant                    :        Case No. 2019 CA 00094


      For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Licking County, Ohio, is affirmed.

      Costs assessed to Appellant.


                               _____
                               HON. JOHN W. WISE


                               _____
                               HON. PATRICIA A. DELANEY


                               _____
                               HON. EARLE E. WISE, JR.