[Cite as *Humphrey v. Humphrey*, 2025-Ohio-5378.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NICKOLAS HUMPHREY, | Case No. 25CA003 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Holmes County Court of Common Pleas, Domestic Relations Division, Case No. 22DR081 |
| RUTH HUMPHREY, | |
| Defendant – Appellant | Judgment:   Affirmed |
| | Date of Judgment Entry: November 26, 2025 |

**BEFORE:** Craig R. Baldwin; William B. Hoffman; Robert G. Montgomery, Judges

**APPEARANCES:** JOSHUA A. NEWTON, for Plaintiff-Appellee; KELLEY R. TAURING, for Defendant-Appellant.

*Baldwin, P.J.*

{¶1}   The appellant, Ruth Humphrey ("Wife"), appeals the January 28, 2025, Judgment Entry entered by the Holmes County Court of Common Pleas, Domestic Relations Division, designating the appellee, Nickolas Humphrey ("Husband"), residential parent and legal custodian of the parties' minor child, B.H.

## STATEMENT OF FACTS AND THE CASE

{¶2}   On April 19, 2014, Husband and Wife were married. After two years of marriage, they separated. During a period of reconciliation, B.H. was born on April 11, 2022.

**{¶3}** On December 5, 2022, Husband filed a complaint for divorce. The parties subsequently negotiated most issues related to the dissolution of their marriage.

**{¶4}** On January 17, 2024, the parties entered into an agreement resolving spousal support, grounds for divorce, and division of marital property. However, they were unable to reach agreement regarding the allocation of parental rights and responsibilities for B.H. The trial court held evidentiary hearings on the remaining parenting issues beginning on February 12, 2024.

**{¶5}** At the hearings, Wife testified to a physical altercation occurring on or about August 17, 2016, during an argument at the marital residence. She testified that she could not recall whether she grabbed a bottle of pills or attempted to swallow them during an argument. According to her testimony, Husband placed her in a choke-hold against a wall and struck her, causing a bruise. Wife stated that she subsequently went to a neighbor's home, where law enforcement was contacted, and Husband was arrested.

**{¶6}** Following the incident, Wife left a voice message for Husband's attorney in which she stated that some of her actions were intended to elicit a reaction from Husband. In the recording, she referenced prior occasions where she had behaved in a manner suggesting self-harm, and Husband had intervened physically to restrain her. Wife admitted to wanting Husband to spend a few days in jail and thought this might lead to a reconciliation. At the hearing, however, Wife denied having previously attempted to harm herself with pills and stated she could not recall how many times she had taken medication in excess of recommended dosages. She also acknowledged that she had, at other times, engaged in self-injurious conduct, including cutting, though she could not

recall the frequency. She said she lied in her message to Husband's attorney in an effort to get the charges dropped.

{¶7} Wife further testified to an incident in which, during a disagreement, she removed Husband's firearm from his holster and held it in a threatening manner before putting it down or handing it to him. She later told Husband she regretted not using the firearm. She sought therapy afterward, but did not receive a formal diagnosis. According to Wife, the parties' relationship was intermittent following the 2016 incident, with Wife moving out but continuing a relationship periodically.

{¶8} Wife became pregnant with B.H. in 2021. After B.H.'s birth in 2022, Wife testified that Husband spent time with both her and the child, visiting at her residence, participating in family activities, and caring for B.H. She also stated that the parties' relationship remained inconsistent and that Husband would sometimes speak to her in a verbally aggressive manner. According to Wife, she requested that Husband not visit her home without another adult present; however, she acknowledged that she routinely invited him over for dinner or to watch television without any other adult present.

{¶9} At various points, Husband requested permission to take B.H. to visit his extended family without Wife. Wife testified that she declined these requests because she did not believe such visits would be safe.

{¶10} In June of 2022, Wife contacted the Sheriff's Office after an argument on the phone. Husband had asked to see B.H., Wife refused, and Husband stated that he might involve law enforcement. Wife hung up and called the Sheriff. A short time later, however, the parties and B.H. attended a community event with Husband's grandparents without reported incident.

{¶11} Throughout the summer of 2022, Husband continued visiting Wife's home several times per week. Text messages admitted at trial suggested that the parties may have engaged in intimacy during this period. Wife testified she could not recall whether physical contact occurred or whether the messages merely referred to earlier discussions.

{¶12} In early October of 2022, Wife stopped allowing Husband to come to her residence, blocked his number, and ceased facilitating contact between Husband and B.H. In November of 2022, Wife filed a petition for a Domestic Violence Civil Protection Order (CPO). Husband filed for divorce in December of 2022.

{¶13} Husband first exercised court-ordered parenting time with B.H. on December 15, 2022. A second visit was scheduled for December 20, 2022. Wife did not bring B.H. to that visit stating the child was ill. Husband requested medical documentation, and Wife acknowledged she had not taken B.H. to a doctor, though she later took her to a nurse practitioner for a wellness check seven days later. Wife testified that she generally schedules B.H.'s medical assessments with a nurse practitioner rather than a physician and does not routinely communicate medical information to Husband. The missed visit was subsequently rescheduled.

{¶14} After the parties reached an initial agreement in the divorce case, Wife dismissed the CPO. In February of 2023, the trial court established the temporary parenting time schedule then in effect.

{¶15} In March of 2023, Wife notified Husband that she intended to take B.H. on vacation. Husband expressed that he did not object to Wife vacationing with B.H. if he too could take B.H. on vacation. Wife testified that Husband taking B.H. on vacation was not in B.H.'s best interest and proceeded with her trip despite Husband's objections. After

returning, she eventually scheduled makeup days but declined to answer Husband's questions on the court-ordered communication platform, communicating instead through counsel.

{¶16}  During one of Husband's visits, B.H. fell from a chair, and Husband took her to the hospital for evaluation out of an abundance of caution. He immediately notified Wife. While in transit, Wife asked Husband to leave the hospital upon her arrival. Husband contacted the Sheriff's Office so he could remain present at the hospital. B.H. was cleared. Wife testified that Husband acted appropriately and handled the situation well.

{¶17} Husband later requested additional parenting time during holidays, including Halloween, Thanksgiving, Christmas Day, and a family Christmas gathering. Wife declined these requests or indicated that Husband would need to forfeit other scheduled parenting time in exchange. Although Husband was entitled to six hours with B.H. on Christmas Day, Wife did not permit it, stating she had believed the provision applied to the prior year. She testified that she preferred a reduction in Husband's parenting time because changes in routine were difficult for B.H.

{¶18}  Next, Husband's mother, S.H., testified that Wife had expressed reluctance about allowing Husband to spend time with B.H. S.H. described Husband as an attentive father who provides regular care, including feeding, bathing, and bedtime routines. She testified that B.H. appeared bonded to both Husband and his extended family.

{¶19}  S.H. also expressed concern regarding B.H.'s medical care, stating that Wife had disclosed using essential oils in B.H.'s milk and that she believed B.H. should see a pediatrician rather than a nurse practitioner. She reported observing bruises on

B.H. while in Wife's care and noticing small objects in Wife's home and car that she believed constituted choking hazards.

{¶20} Husband testified at length regarding the history of the parties' relationship. He described several incidents predating the birth of B.H., including occasions where Wife ingested or attempted to ingest medication during arguments, and times when he intervened physically to prevent her from swallowing pills. He also testified that he discovered evidence of self-harm by Wife during the marriage. These included taking pills while threatening self-harm and taking pills while drinking an entire bottle of wine.

{¶21} Husband stated that the parties separated but later reconciled. He described an incident in which Wife struck her head repeatedly against a vehicle window during a disagreement. The parties again ceased contact for approximately two years before reconnecting in 2020 or 2021, ultimately resulting in Wife's pregnancy with B.H.

{¶22} Following B.H.'s birth, Husband participated in the child's early care and visited Wife's residence several times per week. He testified that he wished for the parties to live together or build a home together, but Wife declined. Husband stated that Wife sometimes restricted his access to B.H., including requiring that his visits take place only at the homes of family members.

{¶23} Husband testified regarding several disagreements in 2022 about access to B.H., including the June 2022 incident where Wife contacted law enforcement. Husband also described the deterioration of the relationship in October of 2022 and Wife's decision to cease contact and later file for a CPO.

{¶24} Regarding medical care, Husband testified that Wife generally did not consult him or allow B.H. to see a doctor. He further testified that he observed bruising

on B.H. during exchanges and expressed concern about Wife's supervision when she was working.

**{¶25}** Husband testified that he maintains a positive, stable relationship with B.H., that his work schedule is flexible, and that childcare is available through his mother and sister. He stated his belief that Wife sought to limit his involvement and that he was willing to facilitate Wife's parenting time if appointed residential parent.

**{¶26}** Husband submitted his 2021 tax return, which reflected negative income. He had not yet filed returns for 2022 or 2023 but testified the 2022 had been prepared. He has not paid the accountant yet and wanted a second opinion on his 2022 tax return. He described various personal expenses, including a mortgage and vehicle payment.

**{¶27}** Husband filed a motion for contempt alleging that Wife had violated the parenting time order. He also issued discovery requests to Wife in August of 2023, which had not been answered as of January of 2024.

**{¶28}** After the evidentiary hearings, the trial court held a limited hearing to address the computation of Husband's income. Wife opposed the presentation of additional evidence. The magistrate issued two decisions. The first one recommended a finding of contempt against Wife for violations of court orders. The magistrate's second decision allocated parental rights by granting Husband sole legal custody of B.H. and established a parenting schedule. Based on Husband's negative income and lack of 2022 income documentation, the magistrate deviated Wife's child support obligation to zero.

**{¶29}** Wife filed timely objections. After conducting an independent review, the trial court overruled the objections, adopted the magistrate's recommendations, allocated parental rights accordingly, and found Wife in contempt.

**{¶30}** Wife filed a timely notice of appeal and herein raises the following two assignments of error:

**{¶31}** "I. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ALLOCATING THE PARENTAL RIGHTS AND RESPONSIBILITIES CONCERNING THE MINOR CHILD AND HOLDING RUTH IN CONTEMPT FOR MADE UP PARENTING TIME."

**{¶32}** "II. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN CALCULATING THE CHILD SUPPORT."

## I.

**{¶33}** In her first assignment of error, Wife argues that the trial court abused its discretion in allocating parental rights and responsibilities and in finding her in contempt. We disagree.

### STANDARD OF REVIEW

**{¶34}** A trial court is afforded broad discretion in custody proceedings. *Cossin v. Holley*, 2007-Ohio-5258, ¶28 (5th Dist.) citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), paragraph one of the syllabus. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

**{¶35}** As this Court noted in *Lee v. Starr*, 2020-Ohio-1649, ¶38 (5th Dist.):

Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether

there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Dinger v. Dinger*, 5th Dist. Stark No. 2001 CA 00039, 2001-Ohio-1386, 2001 WL 1141268. The trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferential review in a child custody determination is especially crucial "where there may be much evidence by the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

### a. Allocation of Parental Rights

**{¶36}** Wife first contends that the trial court abused its discretion in designating Husband as the residential parent and allocating parental rights. We disagree.

### ANALYSIS

**{¶37}** When allocating parental rights and responsibilities, a court must determine the child's best interest. R.C. 3109.04(B)(1). In making a best interest determination, the trial court considers the factors in R.C. 3109.04(F)(1). Those factors pertinent to this appeal include:

(a) The wishes of the child's parents regarding the child's care;

* * *

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

* * *

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is a reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court[.]

{¶38} No one factor is entitled to greater weight than another. *Graves v. Graves*, 2002-Ohio-3740, ¶43 (9th Dist.).

{¶39} In the case sub judice, the trial court found that both parents wished to serve as residential parent, that B.H. was well cared for in both homes, and that Wife and been the primary caregiver. The court also found, however, that each parent expressed concerns about the other's caregiving and rejected the other's concerns.

{¶40} Wife alleged that Husband had a temper, was aggressive, and verbally degraded her. Husband acknowledged a past domestic violence charge but testified the incident arose when he attempted to stop Wife from ingesting a large quantity of pills. The trial court noted that Wife later admitted—in a message to Husband's attorney—that she had fabricated portions of the incident to have Husband arrested. The court also found no evidence supporting her claim that Husband verbally degraded her.

{¶41} The court expressed concern regarding Wife's mental health. Both parties testified about Wife's suicidal ideations, and Wife acknowledged engaging in self-harm and receiving mental health counseling. The trial court found particularly troubling the recorded message in which Wife admitted lying to law enforcement to influence the criminal process. The trial court further found that Wife was lying with ease and indifference to the seriousness of a criminal investigation. The trial court concluded that the ease with which Wife lied negatively affected the credibility of her testimony and raised

concerns regarding her mental health. The trial court found that Wife's mental health issues more concerning than Husbands.

**{¶42}** The trial court also found uncontroverted evidence that Wife repeatedly denied Husband's court-ordered parenting time. Although Wife argued that missed time was later made up, the court noted that makeup time required months of attorney negotiations and concluded that Wife willfully denied Husband parenting time in violation of a court order.

**{¶43}** Our review of the record reveals that the trial court's findings are all supported by relevant, competent, and credible evidence. The trial court conducted an independent review of the magistrate's decision, considered the applicable statutory factors, made credibility determinations within its discretion, and acted within its authority allocating parental rights and responsibilities. We find no abuse of discretion.

**b. Contempt**

**{¶44}** Wife also argues that the trial court abused its discretion in by finding her in contempt. We disagree.

**ANALYSIS**

**{¶45}** "Contempt is defined as a disregard of, or disobedience to, an order or command of judicial authority." *Palnik v. Crane*, 2019-Ohio-3364, ¶54 (8th Dist.). R.C. 2705.02 authorizes contempt as a punishment for disobedience of a court order.

**{¶46}** The trial court found that Wife canceled Husband's visitation with B.H. without properly notifying Husband on December 20, 2022. Wife claimed that B.H.'s symptoms of illness were due to teething. Wife admitted that the symptoms did not trigger

a need for the child to be seen by a doctor. Wife did not respond to Husband's inquiry until after his visitation time window ended.

{¶47} The trial court further found that Wife took B.H. on vacation despite Husband's objections, resulting in additional missed parenting time for Husband. Although Wife eventually allowed makeup visitation, the court noted that this occurred only after prolonged attorney involvement.

{¶48} After review of the entire record, we find the trial court's decision was based on relevant, competent, and credible evidence. The trial court's decision was not unreasonable, arbitrary or unconscionable. The trial court did not abuse its discretion.

{¶49} Accordingly, the first assignment of error is overruled.

## II.

{¶50} In her second assignment of error, Wife argues the trial court erred as a matter of law in calculating the child support. We disagree.

{¶51} Initially, we note that appellee argued Wife invited any alleged error. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 359 (1994).

{¶52} In the case sub judice, following the close of evidence—but before the magistrate issued a decision—the magistrate held a hearing to clarify evidence regarding Husband's income for child-support computation purposes. Wife attended the hearing and expressly opposed the presentation of any additional evidence. As a result, the magistrate was limited to Husband's 2021 tax return in computing income.

{¶53} Wife now argues that the trial court erred in not considering additional evidence, such as Husband's 2022 tax return or supporting documentation. Having objected to such evidence being presented at the clarification hearing, Wife cannot now claim error in the trial court's failure to consider it. "[J]ustice and sensibility should prevent [Wife] from prevailing on an error which [she] invited." *State v. Stewart*, 2008-Ohio-5823, ¶13.

{¶54} Accordingly, we find Wife invited the alleged error.

{¶55} The second assignment of error is overruled.

## CONCLUSION

{¶56} Based upon the foregoing, the decision by Holmes County Court of Common Pleas, Domestic Relations Division, is hereby affirmed.

{¶57} Costs to the appellant.

By: Baldwin, P.J.

Hoffman, J. and

Montgomery, J. concur.