OPINION *Page 2 
{¶ 1} This matter came before the Court on appeal from the trial court's termination of a shared parenting plan, designation of appellee-mother as residential and custodial parent and a child support determination.
 STATEMENT OF FACTS AND LAW {¶ 2} This matter involves the allocation of parental rights and responsibilities for Kayla, a minor child, whose date of birth is January 18, 2000. The parents were unmarried at the time of Kayla's birth. On April 9, 2002, appellant-father, Michael Cossin executed an affidavit and acknowledgement of paternity.
 {¶ 3} The parent's were living together at the time of Kayla's birth but separated when Kayla was approximately two years of age. At the time of the trial court proceedings which are the focus of this appeal, the parents were living separate and apart. Appellant resided in Morrow County, Ohio, and appellee resided in Lawrence County, Ohio. The actual travel distance between the two parents was approximately two and a half to three hours.
 {¶ 4} On March 8, 2002, the parents executed an agreed shared parenting plan.[1] The shared parenting plan was filed, approved and adopted by the trial court on April 12, 2002. The shared parenting plan stated that "the parties have concluded the legal responsibility for the care, custody and control of the parties' minor child shall be shared between the Mother and the Father in accordance with this Shared Parenting Plan pursuant to Ohio Revised Code § 3109.04(D)". The agreed plan further included equal companionship time for both parents in alternating two week increments every month until Kalya reached school age. When Kayla began school, the parties agreed *Page 3 
that appellant would become the residential parent for school purposes and appellee's companionship time would be modified to a long distance arrangement whereby mother enjoyed parenting time every other weekend. The parties agreed that due to the equality of companionship time, child support would not be paid or received by either parent. The parents further agreed that prior to any request for modification the parents would engage in mediation to settle their disputes.
 {¶ 5} On June 5, 2002, appellant moved to terminate the shared parenting plan. Appellant further requested that he be designated residential and custodial parent. On July 30, 2002, an attorney was appointed to represent appellee. After several continuances of the scheduled hearing dates, on April 29, 2004, the matter was ordered to mediation pursuant to the shared parenting agreement.
 {¶ 6} On May 14, 2004, a mediator's report was filed. In the report the mediator indicated that the parties could not reach an agreement and requested that the matter be scheduled for further hearing.
 {¶ 7} In August of 2004, without consulting appellee, appellant enrolled Kayla in a Headstart preschool program. In September of 2004, Kayla began preschool. Appellant then determined that preschool under the shared parenting plan converted mother's visitation to every other weekend. Subsequently, appellant denied appellee visitation from September of 2004 until November of 2004. Furthermore, Kayla's attendance at preschool was sporadic. Out of 93 days of preschool, she was listed as having 43 excused absences.
 {¶ 8} On November 9, 2004, the parents reached an agreement for temporary visitation orders and a memorandum of agreement was filed. The agreement stated that *Page 4 
the appellee would enjoy every other weekend long distance visitation, pursuant to the local rules of court, during the pendency of the custody matter.
 {¶ 9} On February 1, 2005, the trial court appointed a Guardian Ad Litem.
 {¶ 10} On March 13, 2005, appellant was at a local VFW club with friends. During the evening appellant had a verbal altercation with another patron. The bartender, David Bruns, called 911 and two officers responded. Appellant ran from the officers, had to be maced, and was eventually placed under arrest for assault and resisting arrest. At the time of the incident, the officers found appellant to be intoxicated, angry and belligerent.
 {¶ 11} On April 17, 2005, officers received a call from appellant's mother. Appellant's mother contacted officers due to concerns that appellant was drinking and giving his daughter and other children rides on a four wheeler during a cookout at his home. Officers responded and determined that appellant had been drinking but that the children were safe inside the home with another adult who was nineteen (19) years old.
 {¶ 12} Prior to these incidents, appellant had a history of convictions for operating a motor vehicle while under the influence of alcohol. The prior convictions occurred in 1994, 1996 and 2002, all being prior to the execution of the shared parenting agreement. In January of 2002, appellant was sentenced by the Morrow County Court to serve a 165 day jail sentence, which was suspended by the court on the condition that appellant complete an alcohol evaluation and follow any treatment recommendations, and that appellant be placed on 24 months of basic probation. Appellant was also fined $500.00 and received a 365 day driver's license suspension.
 {¶ 13} On July 7, 2005, the Guardian's Report was filed. In the report the guardian recommended that appellant be designated residential custodial parent. *Page 5 
However, the record revealed that during the guardian's investigation appellant failed to notify the guardian that he had three prior alcohol related convictions and a recent charge for assault and resisting arrest. Appellee had also failed to disclose her mental health treatment in 1995.
 {¶ 14} Appellant's motion to terminate the shared parenting plan and for custody were scheduled before a magistrate on three separate hearing dates: August 11, 2005, September 1, 2005, and November 22, 2005. During the hearings the magistrate heard testimony from appellant, appellee, the VFW bartender (David Bruns), the sheriff's deputy who responded to the incidents in March and April of 2005 (Deputy Penny Fox), appellee's mother (Laura Holley), appellee's brother (John Holley), appellant's aunt (Lela Cottrell), appellant's neighbor (Crystal Bennett), appellant's employment supervisor (Doug Grogg) and the guardian ad litem.
 {¶ 15} Appellant testified that he had not been drinking nor was he intoxicated during the incidents in March and April of 2005. The testimony of unrelated witnesses David Bruns and Deputy Fox contradicted appellant's sworn statement. Both Bruns and Fox testified that appellant was intoxicated on both occasions. In March of 2005, appellant was described as having slurred speech and unable to walk without the help of the officers.
 {¶ 16} John Holley testified that since April of 2002, he had personal knowledge of appellant being intoxicated on several occasions. Mr. Holly testified that he observed appellant intoxicated during a camping trip in 2003 and that appellee had to remove Kayla from the situation. Mr. Holley also testified that in 2003 appellant assaulted appellee and that appellee had a black eye and was "scraped up" as a result of the *Page 6 
incident. Mr. Holley also stated that in 2004, appellant called his home at 2:00 a.m. looking for the appellee. He stated that during the telephone conversation appellant stated that he wanted the appellee back and that he would never pay child support. Mr. Holley stated that during the conversation appellant exhibited slurred speech and appeared to be intoxicated. Appellee testified that in 1995 she had been admitted to a hospital for psychiatric treatment. It appears that she remained in treatment for a couple months and was discharged. However, she stated that she was no longer in treatment or on medication for a mental health condition. She further testified that, although she drank while she lived with the appellant, she had not used alcohol in the more than three years since their relationship had terminated.
 {¶ 17} In terms of the ability to remain in a shared parenting arrangement, both appellant and appellee testified that the shared parenting agreement was not working because of poor communication and the distance between the two parents.
 {¶ 18} Other witnesses testified that both parents love Kayla and care for her daily needs. They also testified that both parents engage in special activities with the child and are involved in her education. Furthermore, the witnesses testified that both parents have extended family members who provide the parents with babysitting assistance and are an ongoing source of social support for the child. However, appellant testified that after his mother contacted the police in April of 2005, the relationship with his mother and sister became strained. He admitted that after the incident he had prevented his mother and sister from having contact with Kayla. At the last hearing, appellant testified that Kayla had been having visits with her paternal grandmother and that these family relationships were improving. *Page 7 
 {¶ 19} On March 31, 2006, the magistrate issued a decision effectively terminating the shared parenting plan and designating appellee residential and custodial parent. The magistrate further ordered appellant to pay child support in the amount of two hundred and fifty-two dollars and forty-eight cents ($252.48) per month. The magistrate also ordered that no consumption of alcohol was to take place during companionship time.
 {¶ 20} In the findings of fact and conclusions of law, the magistrate stated that "[t]here are certain statutory factors the court is required to consider in determining whether a modification of custody is appropriate. These factors are delineated in R.C. 3109.04(E)(1)(a). First the court must determine whether there has been a change in circumstances. The second factor a court must consider is whether the modification is in the best interest of the child."[2] The magistrate further stated that the trial court would retain the residential parent designated by the shared parenting plan unless the court found that the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
 {¶ 21} On April 13, 2006, appellant filed an objection to the magistrate's decision stating that the decision was contrary to the weight of the evidence. Appellant requested and was granted the right to supplement the objection after the transcript of proceedings had been prepared and filed. Thereafter, on August 7, 2006, appellant filed a supplemental objection in which appellant set forth three additional arguments as follows: (1) the magistrate failed to provide any information regarding the child's adjustment to appellee's home as required by R.C. 3109.04(F)(1)(c)(d); (2) there is no *Page 8 
evidence that the criminal offenses set forth in the magistrate's decision involved any abuse or neglect of the child; and (3) the magistrate failed to find that the harm likely to be caused by the change of environment would be outweighed by the advantages of a change.
 {¶ 22} On September 8, 2006, the trial court overruled appellant's objections and affirmed the magistrate's decision. The trial court further ordered appellant to pay child support in the amount of two hundred and fifty-two dollars and forty-eight cents ($252.48) per month commencing on April 1, 2006. On October 6, 2006, appellant filed a notice of appeal from the trial court's September 8, 2006, judgment entry which is now before this Court for review. No appellee's brief has been filed.
 {¶ 23} The Court further notes that the record reflects that, on October 2, 2006, prior to filing the notice of appeal, appellant filed a motion to modify the commencement date of the child support obligation. On January 2, 2006, by agreement of the parties and journalized by the trial court's entry, the trial court modified the child support commencement date to the date the child was placed in the physical custody of the appellee. Specifically, the commencement date was modified from April 1, 2006, to September 9, 2006.
 {¶ 24} In this appeal from the trial court's September 8, 2006, judgment entry, appellant sets forth the following assignments of error:
 {¶ 25} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN TERMINATING THE PARTIES' SHARED PARENTING PLAN AND DESIGNATING THE DEFENDANT-APPELLEE THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE PARTIES' MINOR CHILD. *Page 9 
 {¶ 26} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN RETROACTIVELY ORDERING CHILD SUPPORT TO A DATE PRECEDING THE ACTUAL CHANGE OF PHYSICAL CUSTODY OF THE MINOR CHILD."
 I {¶ 27} In the first assignment of error, appellant argues that the trial court erred as a matter of law and abused its discretion in terminating the shared parenting plan and designating appellee legal custodian and residential parent of the minor child. In support, appellant argues that the trial court lacked sufficient credible evidence of a change in circumstances which materially and adversely affected the child to warrant a termination of the shared parenting plan and reallocation of parental rights. In the alternative, appellant argues that the decision is against the manifest weight of the evidence.
 {¶ 28} We begin by noting that a trial court enjoys broad discretion in custody proceedings. Davis v. Flickinger (1997), 77 Ohio St.3d 415,1997-Ohio-260, 674 N.E.2d 1159, paragraph one of the syllabus. Accordingly, a trial court's decision may not be disturbed unless the trial court has abused its discretion. Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N.E.2d 846. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983) 5 Ohio St.3d 217, 450 N.E.2d 1140. Furthermore, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, *Page 10 376 N.E.2d 578; Myers v. Garson, 66 Ohio St.3d 610, 1993-Ohio-9,614 N.E.2d 742. "The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." Davis v. Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260.
 {¶ 29} Ohio Revised Code Section 3109.04 sets forth requirements for the allocation of parental rights and responsibilities for the care of children and includes the procedures for setting up and modifying shared parenting. Pursuant to R.C. 3109.04(E)(1)(a), "[t]he court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies: * * * "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 30} We note that, even though R.C. 3109.04(E)(1)(a) generally requires a change of circumstances in order to modify a decree allocating parental rights and responsibilities, R.C. 3109.04(E)(2)(c) does not mention change of circumstances. When the parties have jointly made a request for shared parenting and also jointly filed *Page 11 
the plan in accordance with 3109.04(D)(1)(a)(i),[3] the shared parenting plan may be modified or terminated by the trial court pursuant to R.C. 3109.04(E)(2)(c). R.C. 3109.04(E)(2)(c) states in pertinent part that "[i]n addition to a modification authorized under (E)(1) of this section:
 {¶ 31} "(c) The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in thebest interest of the children. . . ." (Emphasis added)
 {¶ 32} However, in Oliver v. Arras, Tuscarawas App. No. 2001 AP 11 0105, 2002-Ohio-1590 this Court held that R.C. 3109.04(E)(2)(c) is subordinate to the general provision of R.C. 3109.04(E)(1)(a) and both must be considered to terminate a shared parenting plan.
 {¶ 33} We acknowledge that there is not agreement among the appellate districts as to what standard is appropriate in determining whether a change of circumstances is required in order to terminate an agreed upon shared parenting plan.[4] But, whether we use a change of circumstances analysis or a best interest analysis, our disposition of the case sub judice would be the same. *Page 12 
 {¶ 34} The initial determination to be made by the trial court is whether there has been a change of circumstances of the child or the residential parent since the prior court order. Wyss v. Wyss (1982),3 Ohio App.3d 412, 414, 445 N.E.2d 1153, 1155-1156. This finding should be made prior to weighing the child's best interest. See Green v.Green (Mar. 31, 1998), Lake App. No. 96-L-145, unreported. The change of circumstances must be a change of substance, not a slight or inconsequential change. Wyss v. Wyss, Supra; Zinnecker v. Zinnecker
(1999), 133 Ohio App. 3d 378, 728 N.E.2d 38. In Wyss, the court stated that "[t]he clear intent of that statute is to spare children from a constant tug of war between their parents * * * The statute is an attempt to provide some stability to the custodial status of the children."Wyss, 3 Ohio App.3d at 416. In Davis v. Flicker, the court aptly stated that, "While we do not want to subject children to a tug-of-war between two parents continually attempting to gain custody, we must not make the threshold for change so high as to prevent a trial judge from modifying custody if the court finds it is necessary for the best interest of the child." Davis v. Flicker, 77 Ohio St.3d at 420-421, 674 N.E.2d 1159. In determining whether a "change" has occurred, a trial judge must have wide latitude in considering all the evidence and such a decision must not be reversed absent an abuse of discretion. Miller v. Miller (1988),37 Ohio St.3d 71, 523 N.E.2d 846; See also, Davis v. Flicker, Supra.
 {¶ 35} Ohio Revised Code Section R.C. 3109.04(F) sets forth the factors a trial court must consider in determining the best interest of a child. The factors are in pertinent part as follows:
 {¶ 36} "(a) The wishes of the child's parents regarding the child's care; *Page 13 
 {¶ 37} "(b) If the court has interviewed the child in chambers * * * the wishes and concerns of the child, as expressed to the court;
 {¶ 38} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 39} "(d) The child's adjustment to the child's home, school and community;
 {¶ 40} "(e) The physical and mental health of the persons involved in the situation;
 {¶ 41} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 42} "(g) Whether either parent has failed to make all child support payments, including arrearages, that are required of the parent pursuant to a child support order under which the parent is an obligor;
 {¶ 43} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;
 {¶ 44} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 45} "(j) Whether either parent has established a residence or is planning to establish a residence, outside the state."
 {¶ 46} In this case, the magistrate, as affirmed and adopted by the trial court, ordered a modification of the child's legal custody pursuant to the factors set forth in R.C. 3109.04(E)(1)(a) which requires both, a change of circumstances and a best *Page 14 
interest finding. Appellant argues that the trial court abused its discretion in finding a change of circumstances and/or that the finding was against the manifest weight of the evidence. We disagree.
 {¶ 47} The evidence in this case demonstrated that both appellant and appellee are each committed, loving parents with the ability to meet the child's daily needs and provide the child with an adequate home environment, educational opportunities, extended family relationships, and medical care.
 {¶ 48} However, the record further reflects that appellant has had a history of alcohol abuse which includes three convictions since 1994 for driving under the influence of alcohol. In January of 2002, appellant was ordered to complete an alcohol evaluation and follow any treatment recommendations. Although this information was available to appellee at the time of the execution of the shared parenting plan, the record also reflects that there have been several instances of ongoing alcohol use and abuse since April of 2002. More importantly, in at least two instances the minor child was present and/or in appellants' care. Furthermore, the record includes evidence that, under the influence of alcohol, appellant can be angry, belligerent and violent and that on at least one occasion, appellee has been a victim of his aggressive and assaultive behaviors.
 {¶ 49} The record further reflects that since April of 2002 appellant has failed to honor or be flexible about appellee's companionship time. By appellant's own admission he interfered with the relationship between the child and appellee. Specifically, he prevented appellee from exercising companionship and having telephone *Page 15 
communication with the child for approximately two months during the pendency of the trial court case.
 {¶ 50} Appellant argues that there is no evidence that these actions adversely affected the minor child and therefore do not constitute a "change of circumstances". However, the trial court is not required to sit back and wait until an alcohol impaired parent fails to protect the safety of a child and injury results or until damage to the nurturing relationship between the minor child and a parent results in actual alienation, in order to reach the logical conclusion that these actions have a negative impact on the well being of a child.[5]
 {¶ 51} Furthermore, the record supports the trial court's decision that it is in the child's best interest to be in the custodial care of appellee. The record demonstrates that appellant's alcohol use is an ongoing concern. The record further reflects that appellee's mental health issues in the distant past have been rectified. The record also reflects that appellee has employment, adequate housing and is able to care for the child's daily needs, and that, in appellee's care, the child is surrounded by extended family members who provide valuable support and social interaction. Finally, the evidence demonstrates that appellee is more inclined to honor and facilitate court-approved companionship time.
 {¶ 52} Moreover, the trial court properly concluded that the harm likely to be caused by a change of environment would be outweighed by the advantages of change, as the evidence indicates that appellant has a continuing problem with alcohol and anger. In the judgment entry, the trial court stated, "[t]he Court does specifically make a *Page 16 
finding that the harm likely to be caused by the change of environment is outweighed by the advantages of such change * * * Plaintiff [appellant] has exhibited volatile tendencies in the past and this could be harmful to the child. The trial court further indicated that it was convinced that the appellant has a drinking problem, stating, "The Plaintiff states that he doesn't drink anymore, "just a beer now and then", this is a typical phrase that's used by many that do have an alcohol problem. One does not quit drinking, and has "just a beer now and then"." Conversely, the evidence showed that mother is able to provide an environment free of these concerning factors, has overcome her mental health issues, is devoted to the child and is eager to be the residential, custodial parent.
 {¶ 53} For these reasons, we find that the trial court did not err or abuse its discretion in finding a change in circumstances. We further find that the trial court's decision to modify custody and designate appellee legal custodian and residential parent is not against the manifest weight of the evidence. Accordingly, appellant's first assignment of error is hereby overruled.
 II {¶ 54} In the second assignment of error, appellant argues that the trial court abused its discretion in retroactively ordering child support to a date preceding the actual change of physical custody of the minor child. We agree.
 {¶ 55} It has long been held that the right to child support does not become effective until there has been an actual change of physical custody of the minor child. See, Ollang v. Ollang (1979),64 Ohio App. 2d 17, 410 N.E.2d 789, Flynn v. Flynn (1984) 15 Ohio App. 3d 34,472 N.E. 2d 388. *Page 17 
 {¶ 56} Upon a review of the record it appears that on January 2, 2006, by agreement of the parties and as journalized by the trial court's entry, the trial court modified the child support commencement date to the date the child was placed in the physical custody of the mother. Specifically, the commencement date was modified from April 1, 2006, to September 9, 2006, as requested by appellant. While this Court believes the trial court provided appellant with the appropriate remedy, we are concerned that the trial court lost jurisdiction to enter the order after the notice of appeal was filed on October 6, 2006. Therefore, in order to prevent any concern over the trial court's jurisdiction, we hereby remand this matter to the trial court for a modification of the commencement date for child support in accordance with law.
 {¶ 57} The judgment of the Morrow County Court of Common Pleas is hereby affirmed in part and reversed and remanded in part.
 Edwards, J., Gwin, P.J., and Farmer, J. concur. *Page 18 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Morrow County Court of Common Pleas is affirmed in part and reversed and remanded in part. Costs assessed to appellant.
[1] Appellee was not represented by counsel.
[2] The language of the entry does not specifically mention the termination of the shared parenting plan or the statutory requirements for termination of shared parenting.
[3] 3109.04(D)(1)(a)(i) applies where both parents jointly file a motion for shared parenting and jointly file a shared parenting plan and the trial court finds that the plan is in the best interest of the children.
[4] With regard to the issue of a change of circumstances, it should be noted that some courts have held that pursuant to R.C.3109.04(E)(2)(c), the trial court is not required to find a change in circumstances before terminating the shared parenting plan. Myers v.Myers, 153 Ohio App.3d 243, 792 N.E.2d 770, 2003-Ohio-3552;Williamson v. Williamson, Clark App. No. 2003CA30, 2003-Ohio-6540;Lopez v. Lopez, Franklin App. No. 04AP508, 2005-Ohio-1155, (provisions for termination must be viewed as existing independently of those provided for modification, and under R.C. 3109.04(E)(2)(c), no mention of a change of circumstances is made); c.f. Dobran v. Dobran (Sept.1, 1999), Mahoning App. No. 97 CA 166; Quesenberry V. Quesenberry (Nov. 6, 1998), Champaign App. No. 98 CA 1, unreported; Goetze v. Goetze (Mar. 27, 1998), Montgomery App. No. 16491, unreported. See Also, A.S. v. D.G, Clinton County App. No. 2006-05-017, 2007-Ohio-1156.
A case finding that a change of circumstances is necessary isInbody v. Inbody (June 5, 1995), Hancock App. Nos. 5-94-37, 5-94-46.
[5] As the trial court stated in its opinion, "Abuse of alcohol by a parent always concerns the Court regarding the best interest of a child." *Page 1