[Cite as *In re C.W.*, 2025-Ohio-2857.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE:  C.W. | Case No. 2025 CA 0004 |
| | <u>Opinion And Judgment Entry</u> |
| | Appeal from the Licking County Court of Common Pleas, Case No. C2022-0226 |
| | Judgment:   Affirmed |
| | Date of Judgment Entry: August 13, 2025 |

**BEFORE:** Craig R. Baldwin; Andrew J. King; Robert G. Montgomery, Appellate Judges

**APPEARANCES:** JERMAINE COLQUITT, MICHAEL R. DALSANTO for Petitioners-Appellants J.M. and M.M.; PAUL GIORGIANNI, for Respondents-Appellees C.R.W. and K.W.; KENNETH W. OSWALT, for LCJFS.

OPINION

*Baldwin, P.J.*

{¶1}    Appellants J.M. and M.M., who are the paternal grandparents of Minor Child C.W., appeal the January 7, 2025, Opinion/Judgment Entry of the trial court. The trial court's entry adopted the May 22, 2024, Magistrate's Decision denying the appellants' motion for legal custody of C.W. and returning C.W. to the care and custody of his biological parents, appellees C.R.W. (biological father of C.W., hereinafter "father") and K.W. (biological mother of C.W., hereinafter "mother".) In addition, the trial court's entry modified the Magistrate's Decision regarding the appellants' visitation time with C.W., eliminating their visitation. For the reasons set forth below, we affirm the decision of the trial court.

## STATEMENT OF FACTS AND THE CASE

**{¶2}** The Licking County Job and Family Services – Children Services Agency ("LCJFS") became involved with the appellees in or around April of 2022 based upon, inter alia, concerns about domestic violence in the home, the father's substance abuse, and the appellees' inability to meet the special needs of C.W., who is autistic with severe behavioral issues. On May 23, 2022, while appellee father was undergoing in-patient treatment for his substance abuse issues, appellee mother sought emergency medical help for C.W., as his "behaviors" had escalated: he was displaying aggressive and threatening behaviors, made threats to harm his siblings and appellee mother, and appellee-mother could no longer manage C.W. in the home.[1]

**{¶3}** On May 27, 2022, LCJFS moved for an Emergency Ex Parte Order of Removal requesting temporary custody of C.W. The trial court granted the motion and placed C.W. in the temporary custody of LCJFS, who in turn placed C.W. with the appellants. On May 31, 2022, LCJFS filed a complaint alleging that C.W. was a dependent child. The trial court appointed a Guardian Ad Litem (GAL) for C.W. on May 31, 2022. The appellants filed a Motion to Intervene as Parties and a Motion for Legal Custody on July 12, 2022.

**{¶4}** The trial court conducted a dispositional hearing and, on October 20, 2022, found C.W. to be a dependent child and granted temporary custody to LCJFS. On October 21, 2022, the appellants filed a second Motion to Intervene as Parties and Motion for

---

[1] Also present in the appellees' home are mother K.W.'s two children from a prior relationship, one of whom is also autistic. LCJFS did not seek emergency custody of the appellees' other two children, who remained in the custody and care of appellees.

Legal Custody. On November 9, 2022, the appellants filed a motion for in-camera interview of C.W., which the trial court granted.

**{¶5}** On November 23, 2022, the trial court denied the appellants' Motion to Intervene as Parties, finding that they could pursue legal custody without party status, and scheduled their Motion for Legal Custody for hearing on March 20 and 21, 2023. The trial court initially scheduled the in-camera interview of C.W. for March 13, 2023. The trial court continued all three of these hearings sua sponte due to an "unforeseen scheduling conflict", rescheduling the in-camera interview for July 28, 2023, and the legal custody hearing for August 2 and 3, 2023.

**{¶6}** LCJFS subsequently filed its first motion to extend temporary custody, which the trial court granted on May 9, 2023. Following a status conference, the trial court again continued both the in-camera interview and the legal custody hearing, rescheduling the legal custody hearing for November 13 and 14, 2023. The court did not reschedule the in-camera interview at that time, stating that it would be scheduled at an upcoming status conference.

**{¶7}** During said status conference, all parties agreed to extend the case for six months, extending LCJFS's temporary custody until May 27, 2024. The trial court continued the legal custody hearing to April 29, 2024, but did not reschedule the in-camera interview. A status conference was conducted on January 11, 2024, at which time the trial court ordered that the appellees "continue expanded visitation as approved by the Agency and the GAL along with the child's counselor."

**{¶8}** On March 12, 2024, the GAL filed a motion to appoint an attorney-advocate for the Minor Child, which the trial court granted. The case proceeded to an oral hearing

on the appellants' motion for legal custody on April 29 and 30, and May 10, 2024. The parties were present for all hearings, together with their respective counsel. Also present for all hearings were counsel for the LCJFS; Social Worker Carli Crawford; the GAL; and C.W.'s attorney advocate.

{¶9}    Prior to the hearing, the GAL filed a report recommending that the trial court grant legal custody to the appellants. LCJFS filed a "sunset summary" recommending that the trial court grant the appellants' motion for legal custody. C.W.'s therapist testified that C.W. had a "very close bond" with the appellants, observing significant improvement in his negative behaviors while in their care and noting that the structure they provided helped him reduce those behaviors. She also testified that the appellants remained in close contact with both her and the school, demonstrating their consistent involvement in C.W.'s well-being. The intervention specialist at Licking Valley testified similarly, stating that C.W.'s progress over the last year was "incredible," and that he had "improved tremendously."

{¶10}   Social Worker Carli Crawford testified regarding LCJFS's reasonable efforts to reunify the family, including visitation at Close to Home, the agency, and in an unsupervised setting. She noted behavioral issues when visits were expanded with the appellees, and ongoing concerns with the family. Appellee father admitted to a long-standing substance abuse issue, with a history of addiction to opiates and benzodiazepines. He acknowledged abusing medication, including his own and that of family members, and that he has undergone multiple inpatient treatments, including stays at West House, Park Place, Shepherd Hill, and SUN Behavioral. Appellee mother admitted to writing a letter to a municipal court judge in which she acknowledged that she

had suffered from PTSD, severe anxiety, depression, Bipolar I Disorder, and Borderline Personality Disorder.

**{¶11}** The Magistrate issued a decision on May 22, 2024, finding, inter alia, that appellee father had engaged in treatment for his substance and mental health issues; that appellees had addressed the need to improve their parenting practices, with appellee mother even engaging in extra parenting education over and above what was required; that appellees were employed and had sufficient income to provide for their children, working opposite shifts to allow one parent to always be with the children; that appellees had maintained housing for two years prior to the April hearings; that appellee mother had engaged in mental health services, and provided documentation from her counselor that she no longer needed ongoing services; and, that LCJFS had disregarded the trial court's orders to integrate the appellees into C.W.'s counseling and educational meetings and to pursue family counseling, with the social worker testifying that C.W.'s overnight visits with appellees "began solely due to the upcoming hearing." The Magistrate denied the appellant's motion for legal custody, returned legal custody of C.W. to the appellees, and granted visitation to the appellants subject to a six-month Order of Protective Supervision to LCJFS.

**{¶12}** The appellants objected to the magistrate's decision, and requested that the trial court hear additional evidence. Specifically, the appellants requested that the GAL be permitted to testify. The trial court granted the appellants' request to submit additional evidence and scheduled an oral hearing for August 30, 2024.

**{¶13}** Shortly thereafter, the GAL filed a motion to withdraw from the case, which the appellants supported. The trial court denied the GAL's motion on September 19, 2024.

The GAL filed a motion to reconsider, which the trial court conditionally granted, holding that "once a final opinion is filed on the pending objections in November 2024, the GAL shall be granted leave to withdraw as GAL."

{¶14} The appellants filed supplemental objections to the magistrate's decision, asking that the magistrate's order be set aside. The appellees also filed objections, requesting that the order permitting the appellants' visitation be suspended.

{¶15} The August 30, 2024, oral hearing before the trial judge proceeded as scheduled. The parties were present for the hearing, together with their respective counsel. Also present for the hearing were counsel for the LCJFS, Social Worker Carli Crawford, C.W.'s attorney advocate, and the GAL. Pursuant to the appellants' request, the GAL was called as a witness and provided testimony as to her investigation and ultimate recommendation regarding C.W., with particular focus on information she had not put into the GAL reports filed with the court and entered into evidence during the April 29 and 30, and May 10, 2024 hearing.

{¶16} On January 7, 2025, the trial court issued an Opinion/Judgment Entry in which it affirmed the magistrate's decision and denied the appellants' objections. The court specifically stated that it had conducted an independent review of the matter, including an examination of the hearing transcripts, admitted exhibits, and pleadings. In addition, the court noted that it heard further evidence at the August 30, 2024, hearing, which was conducted after the Magistrate's Decision was issued. The court found, as to each of the appellants' objections, that "the Magistrate did not err" in her findings and further found that the findings were "not an abuse of discretion and [were] supported by

relevant, competent, and credible evidence."  Finally, the trial court granted appellees' objections and eliminated all visitation between the appellants and C.W.

{¶17} The appellants filed a timely appeal, and set forth the following four assignments of error:

{¶18} "I. THE TRIAL COURT FAILED TO "INDEPENDENTLY REVIEW" THE MAGISTRATE'S DECISION IN COMPLIANCE WITH JUV.R. 40(D)(4)(d), ERRONEOUSLY APPLYING AN ABUSE-OF-DISCRETION STANDARD TO THE MAGISTRATE'S DECISION. R. at 340."

{¶19} "II. THE TRIAL COURT ERRED BY CONCLUDING THAT THE AGENCY FAILED TO MAKE REASONABLE EFFORTS TO PREVENT OR ELIMINATE THE NEED FOR REMOVAL OF THE CHILD, BASING THIS DECISION ON ERRONEOUS FACTUAL FINDINGS. R. at 340."[2]

{¶20} "III. AGAINST THE RECOMMENDATIONS OF THE GUARDIAN AD LITEM AND THE LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES, THE TRIAL COURT ERRED BY DENYING APPELLANT'S LEGAL CUSTODY MOTION AND ERRED BY FINDING THAT VISITATION WAS NOT IN THE BEST INTEREST OF C.W., PARTICULARLY IN THE ABSENCE OF AN IN-CAMERA INTERVIEW. R. AT 340."

---

[2]    LCJFS has not filed a brief in this matter, instead filing a Notice on February 18, 2025, advising this Court of its intent to not file an appellate brief, stating: "Now comes the Licking County Job and Family Services - Children Services Agency, who has a right to appear as a party to these proceedings, see Juv.R. 2(BB), and hereby provides formal notice to the Court and all other parties, that it does not intend to file a responsive brief in this matter as the interests of the prevailing party below should be adequately represented by counsel for the biological parents of the child. The Agency is of the opinion that the appearance of counsel for the biological parents of C.W. will assure that a proper defense of the trial court's decision is made before this Court.

**{¶21}** "IV. THE TRIAL COURT ERRED IN REFUSING TO GRANT THE GUARDIAN AD LITEM'S MOTION TO WITHDRAW AND ERRED IN ALLOWING THE GUARDIAN AD LITEM TO WITHDRAW WITHOUT APPOINTING A REPLACEMENT GUARDIAN AD LITEM. R. at 326, 333, 340."

## ASSIGNMENT OF ERROR NO. I

### *Standard Of Review*

**{¶22}** The appellants argue in their first assignment of error that the trial court failed to independently review the Magistrate's Decision in compliance with Juv.R. 40(D)(4)(d), erroneously applying an abuse-of-discretion standard. We disagree.

**{¶23}** Juv.R. 40 provides for the utilization of magistrates in juvenile cases, and states in pertinent part:

(D)(4) *Action of Court on Magistrate's Decision and on Any Objections to Magistrate's Decision; Entry of Judgment or Interim Order by Court*.

\* \* \*

(d) Action on Objections. If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

**{¶24}** An appellate court's standard of review in cases involving a trial court's adoption, modification, or rejection of a magistrate's decision is whether the trial court abused its discretion. *Bailey v. Marrero-Bailey*, 2012-Ohio-894, ¶ 16 (7th Dist.), citing *Spain v. Hubbard,* 2003–Ohio–2555, ¶ 27 (7th Dist.). "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219 (1983).

### *Analysis*

An appellate court presumes that a trial court performed an independent analysis of a magistrate's decision. *Mahlerwein v. Mahlerwein,* 160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, at ¶ 47. Therefore, the party asserting error must affirmatively demonstrate that the trial court failed to conduct the independent analysis. *Arnold v. Arnold,* 4th Dist. No. 04CA36, 2005-Ohio-5272, 2005 WL 2416378, at ¶ 31; *Mahlerwein* at ¶ 47. Further, simply because a trial court adopted a magistrate's decision does not mean that the court failed to exercise independent judgment. *State ex rel. Scioto Cty. Child Support Enforcement Agency v. Adams* (July 23, 1999), 4th Dist. No. 98CA2617, 1999 WL 597257, at *9.

*Jones v. Smith*, 2010-Ohio-131, ¶ 10 (4th Dist.). While the *Jones* court determined that the trial court had erroneously applied an appellate standard of review to its review of the magistrate's decision, we do not find the trial court did so in the case sub judice.

**{¶25}** The trial court specifically stated in its January 7, 2025, Opinion/Judgment Entry that "[a]s required by Juv.R. 40(D)(4)(d), in ruling on the pending objections, this

Court undertook an independent review of the objected matters to ascertain whether the Magistrate properly determined the factual issues and appropriately applied the law. *Juv.R. 40(D)(4)(d).* This Court, in conducting its independent review, has examined the transcripts, the admitted exhibits, and the pleadings filed in the above-captioned matter…." Furthermore, the trial court permitted the appellants to submit supplemental evidence following the Magistrate's issuance of her decision, even going so far as to conduct a hearing at which the GAL provided testimony. As set forth by the court in *Williams v. Matthews*, 2013-Ohio-483 (8th Dist.):

> In reviewing a trial court's ruling on objections to a magistrate's decision "[a]n appellate court presumes that a trial court performed an independent analysis of a magistrate's decision." *Jones v. Smith,* 187 Ohio App.3d 145, 2010–Ohio–131, 931 N.E.2d 592, ¶ 10 (4th Dist.); *see also Alessio v. Alessio,* 10th Dist. No. 05AP–988, 2006–Ohio–2447, ¶ 36. Therefore, a party asserting error must affirmatively demonstrate that the trial court failed to conduct the independent analysis. *Id.* Further, simply because a trial court adopted a magistrate's decision does not mean that the court failed to exercise independent judgment. *Id.* Matthews has failed to "affirmatively demonstrate" that the court failed to conduct an independent review of the magistrate's decisions.

*Id.* at ¶ 17.

**{¶26}** The appellants argue that the trial court's failure to conduct an independent review is evidenced by statements made throughout its January 7, 2025, Opinion/Judgment Entry that "said [Magistrate's] finding is not an abuse of discretion and

is supported by relevant, competent, and credible evidence." However, this language was consistently coupled with language that specifically found "the Magistrate did not err" in rendering her decision. This, combined with the trial court's specific reference to the fact that it conducted an independent review of the Magistrate's Decision, leads this Court to conclude that the trial court did in fact apply the correct standard of review when it considered the appellants' objections to the Magistrate's Decision, and did in fact conduct an independent review of the same. While the "abuse of discretion" language throughout the trial court's Opinion/Judgment Entry is superfluous, ill-advised, and unnecessarily "muddies the waters", a review of the record clearly demonstrates that the trial court did, in fact, conduct an independent review of the case when it ruled on the appellants' objections to the Magistrate's Decision. As such, we find appellants' assignment of error number one to be without merit, and it is therefore overruled.

## ASSIGNMENT OF ERROR NO. II

{¶27} In their second assignment of error, the appellants argue that the trial court erred by concluding that LCJFS failed to make reasonable efforts to prevent or eliminate the need for removal of the child. We find that the appellants lack standing to assert this argument, and therefore overrule assignment of error number two.

{¶28} While the appellants have standing to appeal the trial court's decision to deny their Motion for Legal Custody, they do not have standing to challenge the trial court's decision to approve and adopt the Magistrate's determination that LCJFS failed to make reasonable efforts to reunify the appellees with C.W. Juv.R. 2(BB) defines "party" as "…a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent,

in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court." The appellants do not fall under this definition of "parties" and, while they have standing to appeal the trial court's decision regarding their Motion for Legal Custody, they do not have standing to challenge the trial court's decision on whether the LCJFS engaged in reasonable efforts.

{¶29} The issue was discussed by the court in *In re A.K.*, 2020-Ohio-4700 (6th Dist.):

While not raised by the Agency, we first address the issue of C.F.'s standing. C.F. never had custody of A.K. and was not considered a party in the proceedings. C.F. did, however, file a motion to intervene and motions for legal custody. We have previously held that the filing of a motion to intervene and motion for custody pursuant to R.C. 2151.353(A)(3) "gives rise to another exception to the general rule that a 'party' status is necessary to appeal." Therefore, to the extent that C.F. challenges issues related to the juvenile court's judgment denying her motion for custody, we consider her assignments of error. *See In re A.B.*, 2018-Ohio-4206, 114 N.E.3d 421, ¶ 9 (6th Dist.).

*Id.* at ¶ 20. Thus, while the appellants may challenge issues related to the trial court's judgment regarding their motion for legal custody and visitation, they do not have standing to challenge a decision made by the trial court relating to the conduct of the LCJFS.

{¶30} Furthermore, the LCJFS, who is the party with standing to challenge the trial court's findings regarding reasonable efforts, chose not to challenge the trial court's decision. Rather than file a merit brief regarding the custody and reasonable efforts

issues, it filed a Notice of intent to forego the same, stating that it would not be filing a brief because ". . . the interests of the prevailing party below should be adequately represented by counsel for the biological parents of the child," and that it "is of the opinion that the appearance of counsel for the biological parents of C.W. will assure that a proper defense of the trial court's decision is made before this Court."

{¶31} Assuming, arguendo, that the appellants did have standing to challenge the trial court's decision regarding reasonable efforts, their argument is nevertheless unpersuasive.

### Standard Of Review

{¶32} As set forth by this Court in *Cossin v. Holley*, 2007-Ohio-5258 (5th Dist.):

. . . a trial court enjoys broad discretion in custody proceedings. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 1997-Ohio-260, 674 N.E.2d 1159, paragraph one of the syllabus. Accordingly, a trial court's decision may not be disturbed unless the trial court has abused its discretion. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983) 5 Ohio St.3d 217, 450 N.E.2d 1140. Furthermore, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578; *Myers v. Garson,* 66 Ohio St.3d 610, 1993-Ohio-9, 614 N.E.2d 742. "The reason for this standard of review is that the

trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

*Id.* at ¶ 28.

### *Analysis*

**{¶33}** Over the course of the three-day hearing on the appellants' Motion for Legal Custody, the Magistrate heard the testimony of the appellees; the appellants; C.W.'s therapist; C.W.'s school intervention specialist who works with C.W. on his Individualized Education Program; C.W.'s classroom teacher; the assistant principal at C.W.'s elementary school; the owner of Noah's Ark child care facility which C.W. attended; LCJFS intake caseworker Damian Ortiz; LCJFS intake caseworker Ashley Palmer; Newark Police Officer Wesley Jackson; Newark City Schools intervention specialist Micah Whitehair; LCJFS ongoing social worker Carli Crawford; Utica School intervention specialist and teacher Judy Miller, who worked with the appellees in connection with C.W.'s autistic half-brother; Shana Williams of Close To Home Supervised Visitation Center, who supervised visits between C.W. an the appellees; Laura Linsten, appellee mother's work supervisor and friend; and, Cherry Valley Elementary School principal Chester Coleman. The Magistrate found, based upon the testimony and evidence presented, that LCJFS failed to engage in efforts to include the appellees in C.W.'s medical care and educational decisions, and failed to engage in efforts to establish overnight visits between appellees and C.W. until just before the legal custody hearings were scheduled to proceed, despite specific court orders to do so. The Magistrate found that the appellees had satisfied every requirement that LCJFS established for them in the

case plan, even sometimes exceeding the plan requirements, and that the LCJFS had failed to exercise reasonable efforts at reunification.

**{¶34}** The trial court specifically stated in its Opinion/Judgment Entry that it conducted an independent review of the full record and, in addition, permitted the appellants to submit supplemental evidence and conducted a hearing after the Magistrate's Decision was issued. We cannot say that the trial court acted arbitrarily, capriciously, or unreasonably when it adopted the Magistrate's Decision regarding LCJFS's failure to comply with court orders to engage in efforts to expand the appellees' visitation and move towards reunification of the family. Accordingly, even if the appellants did have standing to challenge the trial court's decision regarding reasonable efforts, which they do not, said assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. III

**{¶35}** In their third assignment of error, the appellants argue that the trial court erred by denying their Motion for Legal Custody, and by finding that visitation between appellants and C.W. was not in C.W.'s best interest, particularly in the absence of an in-camera interview. We disagree.

### *Analysis*

**{¶36}** The issue of legal custody was discussed by this Court in *Matter of K.R.*, 2022-Ohio-1768 (5th Dist.):

> Legal custody is significantly different from the termination of parental rights in that, despite losing legal custody of a child, the parent of the child retains residual parental rights, privileges, and responsibilities. *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14, *citing* R.C.

2151.353(A)(3)(c). In such a case, a parent's right to regain custody is not permanently foreclosed. *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 12. For this reason, the standard the trial court uses in making its determination is the less restrictive "preponderance of the evidence." *Id.* at ¶ 9, *citing In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (2001). An award of legal custody must be supported by a preponderance of the evidence. "Preponderance of the evidence" means evidence that is more probable, more persuasive, or of greater probative value. *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7.

"Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree a juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, *quoting In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, *citing In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child,

the child's wishes, the custodial history of the child, and the child's need for permanence. R.C. 2151.414(D)(1)(a)-(e).

"A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, ¶ 14. Accordingly, we review a juvenile court's decision to grant legal custody under an abuse-of-discretion standard. *In re H.J.H.*, 1st Dist. Hamilton No. C-180019, 2019-Ohio-116, ¶ 3. An abuse of discretion connotes more than an error of law or judgment; rather, it implies the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A juvenile court's decision regarding a child's best interest in a legal custody proceeding is not unreasonable if it is supported by competent, credible evidence. *In re A.W.,* 1st Dist. Hamilton No. C-140142, 2015-Ohio-489, ¶ 10 (Citation omitted).

¶¶ 15-17.

**{¶37}** The trial court affirmed and adopted the Magistrate's Decision which found, inter alia, that the LCJFS failed to engage in reasonable efforts to reunify C.W. with his parents, the appellees. This alone justifies denial of the appellants' Motion for Legal Custody. The issue of reasonable efforts was discussed by the Ohio Supreme Court in *In re CF,* 2007-Ohio-1104. Although *CF* involved permanent custody, the Court's discussion of reasonable efforts is instructive:

***B. Reasonable Efforts to Preserve and Reunify Existing Families***

The right to parent one's children is a fundamental right. *Troxel v. Granville* (2000), 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49; *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680. However, government has broad authority to intervene to protect children from abuse and neglect. R.C. 2151.01. When the state intervenes to protect a child's health or safety, "[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed are called 'reasonable efforts.' " Will L. Crossley, Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation (2003), 12 B.U.Pub.Int.L.J. 259, 260.

No one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151.412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal "[t]o eliminate with all due speed the need for the out-of-home placement so that the child can safely return home." Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151.413(D)—the "12 months out of 22"

rule—"[i]f reasonable efforts to return the child to the child's home are required under section 2151.419" and the agency has not provided the services required by the case plan. See, also, R.C. 2151.414(E)(1) (child may be placed with agency when, notwithstanding reasonable case planning and diligent efforts by the agency, parents fail to remedy problems that caused removal of child); and R.C. 2151.419 ("The agency shall have the burden of proving that it has made [the required] reasonable efforts" to prevent the child's removal or to return the child).

Ohio's Department of Job and Family Services has promulgated regulations that describe reasonable efforts in great detail. Ohio Adm.Code 5101:2–39–05. In addition, the Ohio Rules of Juvenile Procedure require that "[i]n any proceeding involving abuse, neglect, or dependency at which the court removes a child from the child's home or continues the removal of a child from the child's home, * * * the court shall determine whether the person who filed the complaint in the case and removed the child from the child's home * * * has made reasonable efforts to do any of the following:

"(a) Prevent the removal of the child from the child's home;

"(b) Eliminate the continued removal of the child from the child's home;

"(c) Make it possible for the child to return home." Juv.R. 27(B)(1).

*Id.* at ¶¶ 28-33. *C.F.* thus provides that agencies such as LCJFS are required to engage in reasonable efforts to eliminate the continued removal of the child from the child's home, and/or make it possible for the child to return home. In this case, the Magistrate found,

and the trial court agreed, that the LCJFS failed to engage in reasonable efforts to make it possible for C.W. to return home with his parents, the appellees. LCJFS has not appealed this decision, and instead has notified this Court that "the appearance of counsel for the biological parents of C.W. will assure that a proper defense of the trial court's decision is made before this Court." The trial court could not award legal custody of C.W. to the appellants without a finding that reasonable efforts at reunification were undertaken and unsuccessful. The court, however, found that reasonable efforts were not undertaken. Thus, the trial court did not abuse its discretion when it denied the appellant's Motion for Legal Custody.

**{¶38}** Moreover, the trial court did not abuse its discretion when it adopted the Magistrate's finding that it was in C.W.'s best interest to be returned to the custody and care of his parents, the appellees. The court noted that while C.W. displayed a bond with the appellants, he also displayed a bond and love for the appellees and his siblings.

**{¶39}** In addition, the trial court did not abuse its discretion when it affirmed and adopted the Magistrate's decision to forego an in-camera interview of C.W., nor did it abuse its discretion when it agreed that "the evidence presented supported that the expressions of [C.W.] were not consistent and that the maturity level of the child would not have been conducive to produce essential evidence if an in-camera interview would have been conducted," particularly in light of C.W.'s diagnoses of autism, ADHD, delayed global development, and speech issues. Moreover, the GAL stated in her report that C.W. "is not always at the maturity level to ascertain his wishes." Finally, it is noteworthy that during the November 14, 2024, Semi-Annual Review Hearing C.W.'s attorney advocate reported to the trial court as follows:

MS. STREMSKI:     Yes. So I've interviewed [C.W.] historically in different places, and that would include [appellants'] home, and more recently I was just at the [appellees'] home on November the 1st.

Home is a very nice home. They were playing out in the front yard with [C.W.] when I arrived and playing football. And so then I talked to [C.W.] alone. The [appellees] were very accommodating and allowed me privacy.

And so [C.W.] indicated in terms of where he - - you know, we - - we talked a while and then he ended up talking to me about where he would like to live permanently and stay there, and he said he wanted to live with his mom and dad. But he - - he appeared to be happy and, you know, well taken care of.

**{¶40}** We cannot say that the trial court abused its discretion when it found that it was in C.W.'s best interest to be returned to the custody and care of the appellees. Furthermore, we do not find that the court abused its discretion in forgoing an in-camera interview. Accordingly, we find the appellants' third assignment of error to be without merit.

## ASSIGNMENT OF ERROR NO. IV

**{¶41}** In their fourth assignment of error, the appellants argue that the trial court erred in refusing to grant the GAL's Motion to Withdraw, and erred in allowing the GAL to withdraw without appointing a replacement GAL. We disagree.

**{¶42}** The GAL made an oral motion to withdraw at the conclusion of the August 30, 2024, hearing, and filed a Memorandum in Support of Oral Motion to Withdraw as Guardian Ad Litem on September 13, 2024. The appellants filed a Memorandum

Regarding Guardian Ad Litem Withdraw on September 16, 2024, indicating that they did not object to the GAL's withdrawal, and requested a new GAL be appointed. The trial court denied the GAL's motion on September 19, 2024. The GAL filed a motion to reconsider on September 23, 2024, which the trial court conditionally granted, holding that "[o]nce a final opinion is filed on the pending objections in November 2024, the GAL shall be granted leave to withdraw as Guardian Ad Litem."

**{¶43}** First, the appellants do not have standing to challenge the trial court's decision on the GAL's motion to withdraw. For the reasons set forth in our discussion of Assignment of Error Number II, the appellants are not parties herein as defined by Juv.R. 2, and as a result only have standing to challenge the trial court's decision on their Motion for Legal Custody.

**{¶44}** Assuming, arguendo, that the appellants did have standing to challenge the trial court's decision regarding the GAL's Motion to Withdraw, the appellants' argument would still fail. The trial court initially denied the GAL's motion but thereafter modified its decision and held that the GAL would be permitted to withdraw from the case only after a final decision on the appellants' Motion for Legal Custody was issued by the court. The trial court did not act arbitrarily, capriciously, or unreasonably in rendering its decision on the GAL's motion.

**{¶45}** The appellants' fourth assignment of error is without merit.

## CONCLUSION

**{¶46}** Based upon the foregoing, we find the appellants' assignments of error numbers one, two, three, and four are without merit, and are therefore overruled. The

judgment of the Licking County Common Pleas Court, Juvenile Division, is hereby affirmed.

{¶47} Costs to Appellant.

By: Baldwin, P.J.

King, J. and

Montgomery, J. concur.